UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
SHAUN CREWS,

                Petitioner,

                                     MEMORANDUM AND ORDER

      -against-                    19-CV-2091(JS)

CHRISTOPHER MILLER,

                Respondent.
---------------------------------X
APPEARANCES
For Petitioner:     Shaun Crews, pro se
                     #16-A-5017
                     Great Meadow Correctional Facility
                     P.O. Box 51
                     Comstock, New York 12821

For Respondent:    Lauren Tan, Esq.
                     Suffolk County District Attorney's Office
                     200 Center Drive
                     Riverhead, New York 11901

SEYBERT, District Judge:

        Pending before the Court is pro se petitioner Shaun Crews' ("Petitioner") Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising multiple grounds for relief. For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

I.   The Offense Conduct

        On February 26, 2016 at approximately 3:30 p.m., Victoria DeGennaro, the assistant manager at CVS located at 964 Montauk Highway, Shirley, New York, was working in the parking lot of CVS unloading merchandise when she observed Petitioner exit CVS

with a shopping cart containing various un-bagged items. (Tr. 36:16-39:8.)[1] Victoria saw Petitioner bike away from the location, heading eastbound on Montauk Highway, towing the shopping cart behind him. (Tr. 40:20-41:15.) Victoria then went inside CVS and confirmed that Petitioner had not paid for the items in the shopping cart. (Tr. 42:14-43:14.) Victoria also called the manager, Rafat Safwat, to inform him of the incident. (Tr. 37:5-6; 40:9-21.) She described Petitioner as a black male, wearing black and red with a red headband on. (Tr. 41:2-7.) Victoria called 911 to report the incident. (Tr. 41:22-23.)

After being informed of the incident, Rafat exited CVS, looked eastbound down Montauk Highway, and observed Petitioner riding a bike while dragging the shopping cart. (Tr. 254:22-257:17.) Rafat observed that Petitioner matched Victoria's description--wearing black and red clothing and a headband. (Tr. 254:22-255:4.) Rafat then travelled eastbound by car, being driven

---

[1] Transcripts can be found on the docket as follows: 9/29/16 Hearing Transcript, pp. 1-58, D.E. 11-1; 10/17/16 Hearing Transcript, pp. 1-40, D.E. 11-2; 10/18/16 Trial Transcript, pp. 1-19, D.E. 11-3; 10/19/16 Trial Transcript, pp. 20-125, D.E. 11-3; 10/20/16 Trial Transcript, pp. 126-205, D.E. 11-3; 10/21/16 Trial Transcript, pp. 206-245, D.E. 11-3; 10/25/16 Trial Transcript, pp. 246-369, D.E. 11-3; 10/26/16 Trial Transcript, pp. 370-407, D.E. 11-3; 11/30/16 Sentence Transcript, pp. 1-26, D.E. 11-4.

by an employee, on Montauk Highway to stop Petitioner. (Tr. 257:18-258:23.)[2]

While Rafat was heading to retrieve the shopping cart and stolen items, Victoria viewed the surveillance video from inside CVS. (Tr. 42:24-43:14.) The video surveillance showed Petitioner enter CVS and remove multiple items from the shelves, place them inside a shopping cart, and leave CVS without paying for said items. (Tr. 42:14-43:14.)[3]

Rafat reached Petitioner in front of a Midas store at 1160 Montauk Highway, approximately two to three blocks away from CVS. (Tr. 258:16-259:1.)[4] Rafat approached Petitioner and was on the phone with 911 during their interaction. (Tr. 259:2-20; 279:2-

---

[2] Rafat was seated in the passenger seat of a car and the CVS employee was driving the car; Rafat referred to this employee as Brian. (Tr. 257:18-258:3.) Victoria referred to this same employee as Brandon; he was working in the parking lot with her during this incident and she used his phone to call Rafat. (Tr. 40:1-21.)

[3] Julia Shepard, a market investigator for CVS, (Tr. 65:6-12), responded to the location upon learning of the incident and downloaded relevant portions of the video surveillance (Tr. 66:8-67:15). Julia Shepard testified at trial and explained that shoppers at CVS are not permitted to remove shopping carts from the store and stated that the shopping carts are valued at $150. (Tr. 69:18-70:2.)

[4] During the trial, multiple witnesses testified regarding the distance between CVS and the Midas store; at times the distance was referred to as two to three blocks, at other times as approximately one quarter of a mile. (Tr. 55:9-22; 97:13-23; 117:17-23; 132:12-16.)

279:22.)  Rafat grabbed the shopping cart with one hand, had his phone in the other, and asked Petitioner to return the items; Petitioner stated that it was now "lost and found." (Tr. 259:2-8; 261:1-15.)  Rafat then observed Petitioner remove a silver knife from his pocket. (Tr. 259:9-13.)  Petitioner threatened Rafat and swung the knife in his direction. (Tr. 259:9-16.)  Other individuals began to approach the scene, and at this point Petitioner abandoned the shopping cart and biked away. (Tr. 259:17-20.)  Rafat then brought the shopping cart, containing the stolen items, back to CVS. (Tr. 259:21-260:1.)

Dean Battaglia, a Midas employee, was working when the incident between Petitioner and Rafat occurred. (Tr. 132:8-11.) Dean was able to observe a male on a bike towing a shopping cart outside the Midas store and then observed another male exit a car and approach. (Tr. 132:21-133:14.)  Dean then observed a struggle over the shopping cart, saw the male with the shopping cart reach into his pocket, and heard him say "I'm going to stick you." (Tr. 134:1-135:22.)

Victoria was inside CVS when Rafat returned with the shopping cart; it was determined that the shopping cart contained twenty-nine items, including detergent, body wash, deodorant, and razors, with a total value of $263.01. (Tr. 43:19-44:12; 264:13-14.)

Police Officers David Rosante and Scot Devine[5] were dispatched to a crime in progress involving a knife and received a description of a subject as a male wearing a black and red sweatshirt, with a red headband, and riding a bicycle. (Tr. 79:13-24; 153:11-154:6.) Officer Rosante apprehended Petitioner at the corner of Mastic Boulevard and Ormond Place; Petitioner matched the description Officer Rosante had been given. (Tr. 79:25-80:9; 154:2-16.)[6] Upon arrest, Officer Rosante recovered a silver knife from Petitioner's right pants pocket. (Tr. 82:9-15.) Petitioner stated to Officer Rosante that it was only a misdemeanor and he would be out tomorrow, then proceeded to repeat profanities to members of law enforcement. (Tr. 83:18-84:8; 112:25-113:6.) Other members of law enforcement assisted with the investigation, in particular, Police Officer Erik Blom who responded to CVS to take Rafat to a location for a show-up identification. (Tr. 84:9-85:17, 153:1-155:19, 175:2-181:5, 188:12-189:22.) Rafat identified Petitioner, Petitioner was placed under arrest and transported to the local police precinct. (Tr. 85:2-86:24; Hr'g Tr. 37:10-14.)

---

[5] Officer Rosante was assisted by Officer Devine.

[6] Petitioner was arrested approximately one-half mile from the Midas store and approximately one quarter mile from CVS. (Tr. 117:24-118:5; 177:16-25.)

At the precinct, Petitioner was placed inside an interview room; Detective Vittoria McGuire entered the interview room to give Petitioner a soda. (Tr. 191:3-192:5.) Detective McGuire had not asked Petitioner any questions, but Petitioner stated to her that someone else had given him the shopping cart and that Rafat had come after him with a baseball bat. (Tr. 192:3-12.)

## II. The Suppression Hearing and the Trial

On September 29 and October 17, 2016, a suppression hearing was held in New York Supreme Court, Suffolk County, during which the hearing court heard testimony from law enforcement witnesses to resolve evidentiary issues prior to trial. (See Hr'g. Tr.)[7]

Petitioner consented to a bench trial instead of a jury trial; the trial was held from October 18 through October 26, 2016 in New York Supreme Court, Suffolk County. At trial the prosecution presented testimony from numerous law enforcement

---

[7] The Court notes that prior to the suppression hearing, this matter was presented to a grand jury. Following the initial grand jury presentation, defense counsel filed a motion pursuant to Criminal Procedure Law § 190.50, arguing that Petitioner was deprived of his right to testify before the grand jury. (See Legal Aid Society Aff., D.E. 9-2, at ECF p. 2). The state court granted the motion, with leave for the prosecution to represent this case to a grand jury; on May 11, 2016, this case was again presented to the grand jury during which Petitioner testified and an indictment was obtained. (Legal Aid Society Aff. at ECF p. 2.)

witnesses involved in the investigation of this matter, civilian witnesses Victoria, Rafat, and Dean, and introduced the 911 calls and the video surveillance from CVS. (See Trial Trs.) After the prosecution's case, the defense presented their case, calling Detective Maguire and Sergeant William Kerensky. (Tr. 317:17-328:2.) In addition, Petitioner testified on his own behalf. (Tr. 331:11-363:9.) During his testimony, Petitioner admitted that he went to CVS, took items from the shelves, put them in a shopping cart, and left the location without paying. (Tr. 332:2-6.) Petitioner then stated that Rafat approached him in front of the Midas store, told him to give the items back, took the shopping cart, and Petitioner rode away on his bike. (Tr. 332:10-333:16.) Petitioner insisted that there was no struggle over the shopping cart and that he did not brandish any knife out of his pocket. (Tr. 332:18-333:17.) Petitioner admitted to arguing with law enforcement during his arrest but stated that Police Officer Matthews threw him to the ground, hit him with a nightstick in the testicles, and then poked him in the back with the nightstick. (Tr. 335:15-336:4.) While at the precinct, Petitioner stated that he asked to speak with Internal Affairs about his allegations. (Tr. 337:16-25.) On cross-examination, Petitioner admitted that it was common practice for him to steal household products to sell in the neighborhood. (Tr. 344:1-345:12.) Petitioner maintained that he had not taken out a knife during the incident and stated

that he carried the knife for removing tags from the items he planned to steal. (Tr. 349:6-350:14.) Petitioner further stated that he initially was carrying his knife on his right hip, but he conceded that the knife was recovered from his left hip; his explanation was that after the incident he moved the knife from hip to hip. (Tr. 361:16-362:19.) Petitioner claimed that law enforcement coerced Rafat to say that there was a knife involved in their interaction. (Tr. 354:8-10.)

Following the defense case, both defense counsel and the prosecutor provided their summations to the court. (Tr. 372:1-403:5.) On October 26, 2016, the judge found Petitioner guilty of Robbery in the First Degree. (Tr. 405:3-8.)

III. The Sentencing

On November 30, 2016, Petitioner was sentenced by the court. (See S. Tr.) Prior to imposing sentence, the court determined that Petitioner was a violent felony offender. (S. Tr. 7:10-25.) The Government requested a term of twenty years of incarceration, emphasizing Petitioner's prior criminal record. (S. Tr. 16:7-18:17.) Defense counsel asked the court to sentence Petitioner to the statutory minimum of ten years of incarceration. (S. Tr. 20:14-17.) The court sentenced Petitioner to seventeen years of incarceration followed by five years of post-release supervision. (S. Tr. 23:7-24:9.)

IV.  The Post-Conviction Proceedings

Petitioner, through counsel, appealed his conviction to the Second Department of the New York State Appellate Division. On appeal, he argued that: (1) the prosecution failed to meet their burden of proof beyond a reasonable doubt at trial; and (2) his sentence was harsh and excessive. (See App. Div. Br., D.E. 11, at ECF pp. 257-96, at 266-92.)  The Second Department found that "[v]iewing the evidence in the light most favorable to the prosecution . . . it was legally sufficient to establish [Petitioner's] guilt beyond a reasonable doubt." People v. Crews, 164 A.D.3d 1467, 81 N.Y.S.3d 904 (2d Dep't 2018) (internal citation omitted).  Further, the Second Department "conduct[ed] an independent review of the weight of the evidence . . . accord[ing] great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor" and found that Petitioner's conviction was not against the weight of the evidence.  Id. (internal citations omitted).  As to Petitioner's sentence, the Second Department found that Petitioner's "sentence [ ] was excessive" and reduced his sentence to a determinate term of twelve years of incarceration.  Id.

Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on January 3, 2019.  People v. Crews, 32 N.Y.3d 1170, 121 N.E.3d 251, 97 N.Y.S.3d 623 (2019).

On January 3, 2017, while his direct appeal was pending before the Second Department, Petitioner filed a pro se motion under Section 440.10 of the New York Criminal Procedure Law. (See First 440.10 Mot., D.E. 11, at ECF pp. 95-107.) In this 440.10 motion, Petitioner argued that: (1) he received ineffective assistance of counsel due to various errors committed by trial counsel; (2) the indictment and felony complaint were defective; (3) he did not received a fair trial; (4) his sentence was unduly enhanced by his decision to proceed to trial; and (5) the prosecution erred by addressing his youthful adjudication during sentencing. (First 440.10 Mot. at ECF pp. 97-101.)

The Supreme Court of Suffolk County denied Petitioner's first 440.10 motion on April 6, 2017. (See Order Denying First 440.10 Mot., D.E. 11, at ECF pp. 91-94.) The court addressed Petitioner's ineffective assistance of counsel claim in detail, denying the claim and stating:

> [Petitioner] has offered no evidence establishing that he has been prejudiced. Defense counsel requested, and received, extensive discovery . . . [Petitioner's] contention that he was not apprised of the plea deal or told that he could receive a harsher sentence should he fail at trial is belied by the extensive record in this matter. In fact, [Petitioner] was repeatedly advised of the plea offer, on the record, as well as what could happen should he proceed to trial. [Petitioner], however, chose not to take the plea, and chose to proceed to trial notwithstanding the plea offered and the exposure upon conviction after trial.

(Order Denying First 440.10 Mot. at ECF pp. 93-94.) The court then summarily rejected the remaining claims, finding them to be without merit. (Order Denying First 440.10 Mot. at ECF p. 94.) Petitioner sought leave to appeal the court's denial of this motion; the Second Department denied leave to appeal on September 6, 2017. (See Order Denying Leave to Appeal First 440.10 Mot., D.E. 11, at ECF p. 169.)

Petitioner filed his second pro se motion under Section 440.10 on January 10, 2018. (See Second 440.10 Mot., D.E. 11, at ECF pp. 174-209.) In his second 440.10 motion, Petitioner claimed that (1) his grand jury proceeding was defective; (2) the grand jurors committed jury misconduct during the grand jury proceeding; (3) the prosecution committed prosecutorial misconduct during the grand jury proceeding; (4) his due process rights were violated when he was not permitted to represent himself; and (5) his indictment was jurisdictionally defective. (Second 440.10 Mot. at ECF pp. 182-91.)

The Supreme Court of Suffolk County denied Petitioner's second 440.10 motion on March 27, 2018. (See Order Denying Second 440.10 Mot., D.E. 11, at ECF pp. 171-72.) The court first noted that Section 440.10 motions are "not an appropriate conduit for record based matters," that "[t]here is a presumption of regularity which attaches to judgments of conviction," and "where a previous

motion was made and [a petitioner] was in a position to adequately raise the ground or issue underlying the present motion but failed to do so" the court may deny the motion. (Order Denying Second 440.10 Mot. at ECF p. 171.) Accordingly, the court rejected Petitioner's second 440.10 motion in its entirety, stating that Petitioner "was in a position to bring the issues in the previous application and failed to do so. Additionally, some of the claims are appealable and not proper subject of a CPL § 440.10 application. Lastly, the claims are largely of a conclusory nature." (Order Denying Second 440.10 Mot. at ECF p. 171-72.) Petitioner sought leave to appeal the court's denial of his second 440.10 motion; the Second Department denied leave to appeal on September 6, 2018. (See Order Denying Leave to Appeal Second 440.10 Mot., D.E. 11, at ECF p. 321.) Subsequently, Petitioner filed a motion to reargue; the Second Department denied his motion to reargue on December 31, 2018. (See Order Denying Mot. to Reargue, D.E. 11, at ECF p. 323.)

On July 18, 2019, after the conclusion of his direct appeal but while the instant habeas Petition was pending, Petitioner filed a third motion pursuant to Section 440.10 in the Supreme Court of Suffolk County. (See Third 440.10 Mot., D.E. 14-1.) Petitioner argues that he was entitled to a preliminary hearing to determine whether there was probable cause for his arrest pursuant to Criminal Procedure Law § 180.10. (Third 440.10

12

Mot. at 1-3, 7.) The Supreme Court of Suffolk County denied this motion on July 23, 2019, finding that Petitioner could have brought his claims in his previous motions but failed to, and accordingly the court rejected this third attempt at obtaining Section 440.10 relief. (See Order Denying Third 440.10 Mot., D.E. 15, at ECF p. 4.) On August 2, 2019, Petitioner filed a letter with this Court, enclosing the aforementioned denial of his third Section 440.10 motion, arguing that at the time he filed his previous motions he was unaware he had an alleged right to a preliminary hearing and that said hearing would have changed the outcome of his case, and asks this Court to consider this additional claim in its habeas review. (See Aug. 2 Letter, D.E. 15, at ECF pp. 1-3.)[8]

---

[8] This Court summarily rejects the claims in Petitioner's third attempt at seeking relief through a Section 440 motion and will not reach the merits of said claims in the contents of this order. The Court finds that the state court rejected said claims on procedural grounds, as Petitioner should have presented these claims in any of the multiple prior submissions to the state court but failed to do so. In addition, the Court does not find that Petitioner's explanation for why these claims were not previously presented allows him to overcome the procedural bar. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); see also Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991). To the extent this preliminary hearing claim is also the basis for Petitioner's letter motion to amend his Petition (see Mot. to Amend, D.E. 7; Resp't's Letter Opp. to Mot. to Amend, D.E. 8), the letter motion to amend is DENIED.

V.   <u>The Instant Petition</u>

Petitioner filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 8, 2019.[9] He asserts the following grounds for relief:

(1)   the trial court's denial of the mid-trial motion to dismiss the People's case violated his Fourteenth Amendment due process rights;

(2)   the prosecution failed to meet their burden of proof beyond a reasonable doubt at trial;

(3)   his sentence was harsh and excessive, violating the Eighth Amendment;

(4)   his grand jury proceedings were defective, violating both the Fifth and Fourteenth Amendment;

(5)   the prosecution committed prosecutorial misconduct during the grand jury proceedings;

(6)   the members of the grand jury committed jury misconduct during the grand jury proceedings;

(7)   his indictment was constitutionally defective;

(8)   he did not receive a fair and impartial trial;

(9)   the felony complaint was jurisdictionally defective;

(10)  the trial court infringed on his First and Fourteenth Amendment rights by not allowing him to prepare his own defense and not permitting him to represent himself at trial; and

(11)  trial counsel committed various errors that amounted to ineffective assistance of counsel.

---

[9] The Court notes that Petitioner filed a civil suit related to this incident that remains pending.  (<u>See</u> Docket No. 16-CV-7209 (JS)(SIL).)

(See Pet., D.E. 1, at ECF pp. 5-21.)  On June 21, 2019, the
Government opposed Petitioner's habeas Petition, contending that
some of Petitioner's claims were inadequately raised in state court
and arguing that all of Petitioner's claims are without merit.
(See Resp't's Return, D.E. 9; see also Resp't's Mem. of Law, D.E.
9-1, at 10-32.)[10]  Respondent filed an affidavit submitted by the
Legal Aid Society, opposing Petitioner's contentions regarding the
inadequacy of trial counsel's representation, indicating that
Petitioner's trial counsel retired from the Legal Aid Society, but
that the affidavit was based on a review of the file.  (See Legal
Aid Society Aff., D.E. 9-2, at 1.)  On July 10, 2019, Petitioner
replied, restating his claims for habeas relief.  (See Pet'r Reply,
D.E. 12.)[11]

---

[10] Respondent groups Petitioner's claims as follows: (1) that
Petitioner's guilt was proven beyond a reasonable doubt
(addressing Petitioner's grounds 1, 2, and 8); (2) that
Petitioner's sentence did not violate the Constitution
(addressing Petitioner's ground 3); (3) that Petitioner's
ineffective assistance of counsel arguments were without merit
(addressing Petitioner's ground 11); (4) that Petitioner's
contentions regarding the denial of his right to represent
himself were both procedurally barred and without merit
(addressing Petitioner's grounds 8 and 10); and (5) that the
contentions regarding the grand jury proceeding and felony
complaint are both procedurally barred and not cognizable on
habeas review (addressing Petitioner's grounds 4, 5, 6, 7, 8,
and 9).  The Court, like the Respondent, finds portions of
Petitioner's habeas claims duplicative.

[11] As mentioned above, Petitioner filed a letter with this Court
dated July 12, 2019, asking the Court to consider another
Section 440.10 motion he filed with the Supreme Court of Suffolk
County, as well as raising allegations that the District

For the reasons discussed below, all of Petitioner's claims are either procedurally barred from review or without merit. Accordingly, the Petition is DENIED in its entirety.

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. The Legal Standard

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399, 120 S. Ct. 1495, 1516, 146 L. Ed. 2d 389 (2000). A state prisoner seeking habeas corpus relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254, as amended by AEDPA, provides, in part, that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court

---

Attorney of Suffolk County personally advocated for Petitioner to be arrested for Robbery in the First Degree. (See July 12 Letter, D.E. 13.) The Court has reviewed this letter in its entirety, and to the extent that its contents are pertinent to his habeas claims, this Order addresses it. Regarding Petitioner's assertion that the administration of the District Attorney's Office of Suffolk County advocated for his arrest, the Court summarily rejects this conclusory allegation as it is entirely unsupported by the underlying record of this case.

> proceedings unless the adjudication of the
> claim--
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States.

28 U.S.C. § 2254. AEDPA established a deferential standard of relief, seeking to "avoid[ ] unnecessarily 'disturbing the State's significant interest in repose for concluded litigation, denying society the right to punish some admitted offenders, and intruding on state sovereignty to a degree matched by few exercises of federal judicial authority.'" Virginia v. LeBlanc, 137 S. Ct. 1726, 1729, 198 L. Ed. 2d 186 (2017) (quoting Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011)) (brackets omitted). Accordingly, a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993). Ultimately, "the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); see also Hawkins v. Costello, 460 F.3d 238, 246 (2d Cir. 2006).

As mentioned above, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case different than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S. Ct. at 1523.

A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. at 1523. This standard does not require that all reasonable jurists agree that the state court was wrong; rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable

jurists.'" <u>Jones</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" <u>Jones v. Murphy</u>, 694 F.3d 225, 234 (2d Cir. 2012) (quoting <u>Hardy v. Cross</u>, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011)). Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal[ ]court re[-]litigation of claims already rejected in state proceedings." <u>Harrington</u>, 562 U.S. at 102, 131 S. Ct. at 786.

Assuming that a petitioner's claims are cognizable on habeas review, a petitioner must exhaust state court remedies before coming to federal court. Exhaustion of state court remedies requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" <u>See</u> <u>Jackson v. Edwards</u>, 404 F.3d 612, 619 (2d Cir. 2005) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" <u>Jones v. Keane</u>, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting <u>Dorsey v. Kelly</u>, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically,

[petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

In addition, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level on "independent and adequate" state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 731-32, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991). This procedural bar applies even if the state court addressed the merits in the alternative but decided the claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

To obtain review of procedurally barred claims, a state prisoner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence such that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.

II. Application

As stated above, Petitioner seeks habeas relief on multiple grounds. The Court finds that significant portions of Petitioner's habeas claims are duplicative, and the Court will address the claims as follows:

(1) the mid-trial motion to dismiss claim (answering Ground 1);

(2) the burden of proof claim (answering Ground 2);

(3) the harsh and excessive sentence claim (answering Ground 3);

(4) the grand jury proceedings claim (answering Grounds 4, 5, and 6);

(5) the defective indictment claim (answering Grounds 7 and 9);

(6) the fair and impartial trial claim (answering Ground 8);

(7) the right to prepare own defense claim (answering Ground 10); and

(8) the ineffective assistance of counsel claim (answering Ground 11).

(Pet. at ECF pp. 5-21.)   The Court acknowledges that pro se submissions, like those from Petitioner, require flexible construction, and so the Court must interpret them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).   But this leeway does not excuse Petitioner "'from compl[ying] with relevant rules of procedural and substantive law,'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)), as he "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated" Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

A. The Mid-Trial Motion to Dismiss Claim (answering Ground 1)

Petitioner contends that he is entitled to habeas relief as his Fourteenth Amendment due process rights were violated when the trial court denied his trial counsel's mid-trial motion to dismiss for lack of evidence without holding a hearing. (Pet. at ECF p. 5.)

Petitioner frames this claim as an error made by the trial court in its determination of the merits of defense counsel's mid-trial motion. To the extent that Petitioner is claiming that the state court erred in its determination to deny the motion, "that claim is 'an error of state law, for which habeas review is not available.'" Christopher v. Connolly, No. 06-CV-1575, 2013 WL 1290810, at *6 (E.D.N.Y. Mar. 28, 2013) (quoting Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002)). In addition, "[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony." Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (internal quotation marks and citation omitted). Therefore, this Court will not step in to replace the state court's judgment on the merits of defense counsel's mid-trial motion to dismiss.

However, construing this claim liberally, Petitioner is claiming that defense counsel's mid-trial motion to dismiss was correct because there was insufficient evidence presented at trial

to support a finding of guilt. The Court proceeds to address Petitioner's insufficiency claim in the following section and denies this claim for the reasons discussed below.

B.  The Burden of Proof Claim (answering Ground 2)

Petitioner contends that he is entitled to habeas relief as the prosecution failed to meet their burden of proof as to his conviction of Robbery in the First Degree. (See Pet. at ECF p. 6.)[12] This claim was raised on direct appeal and rejected on the merits by the Second Department, stating that "[v]iewing the evidence in the light most favorable to the prosecution . . . it was legally sufficient to establish [Petitioner's] guilt beyond a reasonable doubt." Crews, 164 A.D.3d at 1467 (citations omitted). As this claim was denied on the merits, the Court applies AEDPA deference and finds that the state court's determination was not contrary to, or an unreasonable application of, clearly established federal law.

When a petitioner claims that there was insufficient evidence to support a conviction, the Court considers whether there was "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 313, 99 S. Ct. 2781, 2785, 61 L. Ed. 2d 560 (1979).

---

[12] Petitioner includes within this claim an argument that his resulting conviction violated the Eighth Amendment; the Court's denial of the burden of proof claim makes the Eighth Amendment portion of the claim moot.

"[A] challenge to the sufficiency of the evidence presents the question 'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (quoting <u>Jackson</u>, 443 U.S. at 319, 99 S. Ct. at 2781 (emphasis in original)). Moreover, "[a] defendant challenging a conviction on sufficiency grounds bears a heavy burden" and "[t]he reviewing court must consider the evidence in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." <u>United States v. Hernandez</u>, 85 F.3d 1023, 1030 (2d Cir. 1996). Further "the resolution of issues of credibility is exclusively the province of the jury." <u>United States v. Shulman</u>, 624 F.2d 384, 388 (2d Cir. 1980) (citations omitted). As discussed prior, the instant matter was resolved through a bench trial and "[i]n a bench trial, credibility assessments are the sole province of the presiding judge." <u>DeGiorgio v. Fitzpatrick</u>, No 08-CV-6551, 2011 WL 10501908, at *7 (S.D.N.Y. Mar. 8, 2011).

To evaluate the sufficiency of the evidence, "[a] federal court must look to state law to determine the elements of the crime." <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted). Under New York state law, in pertinent part, "[a] person is guilty of robbery in the first degree when he

forcibly steals property and when, in the course of the commission

of the crime or of immediate flight therefrom, he or another

participant in the crime: . . . (3) [u]ses or threatens the use of

a dangerous instrument." N.Y. PENAL LAW § 160.15(3). New York law

states that:

> Robbery is forcible stealing. A person
> forcibly steals property and commits robbery
> when, in the course of committing a larceny,
> he uses or threatens the immediate use of
> physical force upon another person for the
> purpose of:
> 1. Preventing or overcoming resistance to
> the taking of the property or to the retention
> thereof immediately after the taking; or
> 2. Compelling the owner of such property or
> another person to deliver up the property or
> to engage in other conduct which aids in the
> commission of the larceny.

N.Y. Penal Law § 160.00.

Viewing the facts in the light most favorable to

Respondent, the Court finds that based on the evidence contained

in the underlying record, a rational trier of fact, here the trial

judge, certainly could have found Petitioner guilty of Robbery in

the First Degree. The evidence presented at trial demonstrated

that Petitioner entered CVS, removed items from the shelf, left

the store without paying for the items, and attempted to flee the

location; all of which was captured on video surveillance and

conceded to during Petitioner's own testimony. (Tr. 42:14-43:14;

332:2-6.) In addition, the evidence established that in his flight

from CVS the store manager approached Petitioner to attempt to

retrieve the stolen items, approximately two to three blocks from CVS, at which point Petitioner threatened the store manager by pulling out a silver knife from his pocket and waving it in the direction of the store manager before fleeing the scene. (Tr. 258:16-259:20.) A silver knife was recovered by law enforcement on Petitioner's person upon arrest. (Tr. 82:9-15.) Though Petitioner maintains that he did not remove the knife from his pocket, this claim was contradicted by the testimony of the store manager. Accordingly, though Petitioner argues otherwise, there was sufficient evidence presented at trial to contradict Petitioner's version of events and to support the trial court's rejection of Petitioner's defense.

Further, to the extent that Petitioner is attempting to challenge the weight of the evidence presented at trial, a weight of the evidence claim is not cognizable in a habeas corpus proceeding, as it is purely a state law claim. See Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."); see also Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Accordingly, this claim is not reviewable.

In sum, upon review of the underlying record in its entirety and applying AEDPA deference, the Court rejects this claim.

### C.   The Excessive Sentence Claim (answering Ground 3)

Petitioner claims that he is entitled to habeas relief because his sentence is harsh and excessive, emphasizing that his pre-trial offer was considerably lower than the sentence he received after trial.  (Pet. at ECF p. 8.)  This claim was raised on direct appeal and the Second Department exercised its "discretion in the interest of justice" and reduced the sentence to a twelve year term.  Crews, 164 A.D.3d at 1467.

It is well settled that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Alfini v. Lord, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." (collecting cases)); McCalvin v. Senkowski, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by law.").  According to the New York State Penal Law at the time of conviction, the maximum sentence permitted for a conviction of Robbery in the First Degree by a second violent felony offender

was ten to twenty-five years of incarceration followed by five years of post-release supervision. See N.Y. PENAL LAW §§ 60.05(6), 70.02(1)(a), 70.04(2), 70.04(3)(a), 70.45(2).

Therefore, Petitioner's term of imprisonment falls within what was permitted by the New York State Penal Law and there is no federal question for habeas review. The Court rejects this claim.

D. The Grand Jury Proceedings Claim (answering Grounds 4, 5, and 6)

Petitioner contends that he is entitled to habeas relief because the grand jury proceedings were defective. (See Pet. at ECF pp. 9, 13-14.) Specifically, Petitioner claims that:

> One of the jurors on the grand jury panel sat through the whole proceeding after being asked twice by the prosecutor was she familiar with [Petitioner] or his attorney [and there was] no show of hands or response. At the end of the proceeding the juror stated she needed to be excused because she knew [Petitioner] [and] the prosecutor just let her leave without inquiring if she revealed anything to the other jurors on the panel to prejudice [Petitioner] or inquired by asking the jurors did the juror reveal anything.

(Pet. at ECF p. 9.) Petitioner adds that the prosecutor committed prosecutorial misconduct by failing to inquire during the grand jury proceeding what, if anything, the grand juror revealed to the panel; by allowing the grand juror to remain for the presentation of the case; and by failing to ensure the integrity of the proceedings by not presenting the case to another panel. (See

Pet. at ECF p. 13.)  Further, Petitioner characterizes the grand juror's conduct as "juror misconduct" by the juror remaining on the panel during the presentation of Petitioner's case despite being familiar with Petitioner.  (Pet. at ECF p. 14.)[13]

Petitioner raised his challenges to the grand jury proceedings in his second 440.10 motion and the state court rejected the claims on a procedural ground, as Petitioner failed to raise this claim in his previous submissions to the court. Thus, the Second Department "expressly relied on a procedural default as an independent and adequate state ground" when rejecting this argument.  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)). Accordingly, this claim is procedurally barred from habeas review. In addition, Petitioner has failed to demonstrate cause, prejudice, or a fundamental miscarriage of justice resulting if he is barred from habeas review; thus, he is unable to overcome this procedural bar.  See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. However, the Court addresses the merits of this claim and finds that it does not provide a basis for relief.

---

[13] Petitioner claims that the errors in the grand jury proceeding violated his Fifth and Fourteenth Amendment rights.  As the Court finds that his grand jury claims are procedurally barred and without merit, he has established no violation of his constitutional rights.  (Pet. at ECF pp. 9, 13, 14.)

It is established that, "[c]laims of deficiencies in state grand jury proceedings are generally not cognizable in a habeas corpus proceeding in federal court. Any grand jury deficiencies are rendered harmless by a petit jury conviction assessing petitioner's guilt under a heightened standard of proof." Occhione v. Capra, 113 F. Supp.3d 611, 631 (E.D.N.Y. 2015) (citing Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). Therefore, defects in the grand jury proceedings were cured by his conviction after trial, and as such, the Court rejects Petitioner's contentions regarding the grand jury errors.

Petitioner adds a prosecutorial misconduct claim in regard to the grand jury proceedings. "To prevail on such a claim, a state habeas corpus petitioner must show that the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." Moore v. Conway, 476 F. App'x 928, 930 (2d Cir. Apr. 23, 2012) (internal quotation marks and citations omitted). "In determining whether the prosecutor's behavior deprived the petitioner of a fair trial, we consider 'the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct.'" Id. (quoting United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002)). Petitioner's claims that the presence of a grand juror who was familiar with him in the grand jury panel may have affected the deliberations or the resulting indictment are

speculative. The Court is not convinced that the prosecution's actions in regard to this member of the grand jury amount to misconduct such that his conviction should be vacated. Further, as stated above, Petitioner's subsequent conviction after trial cured any of these purported defects in the grand jury process.

Petitioner also argues that the grand juror remaining on the panel in these circumstances amounted to juror misconduct, stating:

> In this instance the juror in question knowingly committed juror misconduct when the prosecutor asked not once, but twice was anyone familiar with [Petitioner] or his attorney [and] the juror didn't respond and sat through evidence presentation[,] video footage[,] and testimony knowing that she knew [Petitioner]. The jury committed [juror] misconduct when they [ ] voted on a false indictment [ ] knowing that the integrity was impaired and [Petitioner] may have been prejudiced.

(Pet. at ECF p. 14.) Ultimately, "to obtain habeas relief for juror misconduct, [a] petitioner must demonstrate that he was prejudiced by the alleged misconduct." Scott v. Connolly, No. 11-CV-0953, 2014 WL 354253, at *11 (E.D.N.Y. Jan. 30, 2014). As Petitioner's argument is centered around grand juror misconduct, and he was subsequently found guilty beyond a reasonable doubt after a bench trial, he has not established that he was prejudiced by the alleged events during the grand jury proceedings.

E.   The Defective Indictment Claim (answering Ground 7 and 9

Petitioner further claims that he is entitled to habeas relief because of alleged defects in the indictment and felony complaint. (See Pet. at ECF pp. 15, 18.) Specifically, Petitioner states that "[t]he indictment that was procured resulting in the judgment was false known by the prosecutor and the court. The indictment was also vague . . . [and] jurisdictionally defective because the statute defining the charge is unconstitutional or invalid or defective because the indictment fails to substantially conform to the requirements." (Pet. at ECF p. 15.)[14]

Like Petitioner's claims regarding the errors during his grand jury proceeding, the allegations of defects in the indictment and felony complaint were raised in his second 440.10 motion. (See Second 440.10 Mot. at ECF pp. 182-90.) The Second Department denied the claims on a procedural basis, finding that Petitioner was in a position to raise these claims in his previous motions but failed to do so. (See Order Denying Second 440.10 Mot. at ECF pp. 171-72.) Accordingly, as discussed above, this claim is procedurally barred from review and Petitioner has failed to demonstrate any basis to overcome this procedural bar. Though

---

[14] Petitioner contends that the defective indictment violated his Eighth and Fourteenth Amendment rights, but as Petitioner has not established an error in the indictment, the Court rejects his Eighth and Fourteenth Amendment claims. (Pet. at ECF pp. 15, 18.)

this claim is procedurally barred, the Court addresses the merits and finds that it does not provide a basis for relief.

It is well-settled that "[c]hallenges to the sufficiency of a state indictment are generally not cognizable on habeas review." Scott v. Superintendent, Mid-Orange Corr. Facility, No. 03-CV-6383, 2006 WL 3095760, at *6 (E.D.N.Y. Oct. 31, 2006). A petitioner may obtain habeas relief based on an insufficient indictment only if it falls below what is constitutionally required. See Whaley v. Graham, No. 06-CV-3843, 2008 WL 4693318, at *9 (E.D.N.Y. Oct. 15, 2008) ("As with the form of an indictment, a challenge to the sufficiency of a state indictment is not cognizable on habeas review unless the indictment falls below constitutional standards."). Accordingly, an indictment does not deprive a petitioner of his constitutional rights if "it charges a crime (1) with sufficient precision to inform the [petitioner] of the charges he must meet and (2) with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." DeVonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994) (internal quotation marks and citation omitted).

Turning to the underlying indictment, it states that Petitioner, "on or about February 29, 2016, in Suffolk County, New York, forcibly stole certain property from Rafat Safwat, and in the course of the commission of the crime or of the immediate flight therefrom, [Petitioner] used or threatened the immediate

use of a dangerous instrument." (See Ind., D.E. 11, at ECF p. 207.) As already mentioned, "[c]hallenges to state indictments are only cognizable on habeas review if the indictment fails to satisfy the basic due process requirements: notice of 'the time, place, and essential elements of the crime.'" Scott, 2006 WL 3095760 at *6 (quoting Carroll v. Hoke, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988), aff'd, 880 F.2d 1318 (2d Cir. 1989)). Petitioner fails to articulate any specific error in his indictment and the Court finds no error in the indictment that violates Petitioner's constitutional rights.

Regarding Petitioner's alleged defective complaint, "[a] question about whether a felony complaint was jurisdictionally defective is only a question of state law." Chappelle v. Fisher, No. 06-CV-10201, 2008 WL 1724185, at *11 (S.D.N.Y. Apr. 10, 2008). "In any event, habeas review is not available for purported defects in a felony complaint that have been rendered harmless by a sound superseding indictment and conviction." Thompson v. Artus, No. 10-CV-1443, 2013 WL 6408354, at *12 (E.D.N.Y. Dec. 6, 2013). As stated above, both a valid indictment and a conviction after trial followed his felony complaint. Thus, this claim is denied.

F. The Fair and Impartial Trial Claim (answering Ground 8)

Petitioner raises an additional claim for habeas relief that his Fourteenth Amendment due process rights were violated because he did not receive a fair trial, stating "[t]he proceedings

itself [were] defective to the point where the court didn't conduct a fair trial in a competent manner." (See Pet. at ECF pp. 16-17.)

The Court notes that "[a] habeas petition may be denied where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." Robles v. Lempke, No. 09-CV-2636, 2011 WL 9381499, at *26 (E.D.N.Y. Sept. 9, 2011) (internal quotation marks and citations omitted). Reviewing this claim, the Court finds that Petitioner fails to adequately articulate what about his trial violated his due process rights. Therefore, this Court finds the claim conclusory and rejects it. See O'Diah v. Corcoran, No. 09-CV-3580, 2013 WL 1339413, at *19 (E.D.N.Y. Mar. 29, 2013) (rejecting habeas claims as they are "conclusory, vague and frivolous, and thus insufficient to state a claim for habeas relief.")

G. The Prepare Own Defense Claim (answering Ground 10)

Petitioner claims that he is entitled to relief as "[t]he court denied [Petitioner] to prepare for his own defense . . . [and] [Petitioner] also made it clear to the court that he wished to proceed pro se [and] the request was denied without a hearing or producing a competency test to determine if [Petitioner] was

suitable to proceed pro se or if [Petitioner] was suitable to move forward to trial." (Pet. at ECF p. 19.)[15]

Petitioner raised this argument in his second 440.10 motion and the state court rejected the claim on a procedural ground, finding that Petitioner failed to raise this claim in his earlier submissions to the court. Thus, the Second Department "'expressly relied on a procedural default as an independent and adequate state ground'" when rejecting this argument. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)). Accordingly, this claim is procedurally barred from habeas review. In addition, Petitioner has failed to demonstrate cause, prejudice, or a fundamental miscarriage of justice resulting if he is barred from habeas review; accordingly, he is unable to overcome this procedural bar. See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.

It is established that "the Sixth Amendment grants a criminal defendant the right to represent himself at trial." Rush v. Lempke, 500 F. App'x 12, 14 (2d Cir. 2012) (citing Faretta v. Cal., 422 U.S. 806, 819-21, 95 S. Ct. 2525, 2533-34, 45 L. Ed. 2d 562 (1975)). The right to represent oneself "may be exercised by

---

[15] Petitioner adds that this error in the underlying proceeding violated his First and Fourteenth Amendment rights; as the Court finds that no such error was committed, the Court does not find any violation of his First or Fourteenth Amendment rights. (Pet. at ECF p. 19.)

all criminal defendants who knowingly, voluntarily, and unequivocally waive their right to appointed counsel." <u>Johnstone v. Kelly</u>, 808 F.2d 214, 216 (2d Cir. 1986). Further, "[t]here must be an initial request to proceed <u>pro</u> <u>se</u> that is clear and unequivocal in order for a [petitioner] to waive the right to counsel." <u>Morris v. Kikendall</u>, No. 07-CV-2422, 2009 WL 1097922, at *8 (E.D.N.Y. Apr. 23, 2009) (citing <u>Williams v. Bartlett</u>, 44 F.3d 95, 100 (2d Cir. 1994)). When a petitioner expresses a right to represent himself, "the right may be subsequently waived if the [petitioner] either abandons the request altogether or vacillates on the issue." <u>Id.</u>

Having reviewed the underlying record in its entirety, including the transcripts of the suppression hearing, the bench trial, and the motions made to the state court, the Court finds no request from Petitioner to represent himself, let alone an unequivocal request, and Petitioner does not state when during the state court proceedings such a request was made. Thus, as the underlying record does not support this claim, it is denied.

H. <u>The Ineffective Assistance of Counsel Claim (answering Ground 11)</u>

Petitioner raises multiple grounds of ineffective assistance of counsel that he received during the state court proceedings. (<u>See</u> Pet. at ECF pp. 20-21.) Specifically, Petitioner claims that he is entitled to relief as his trial

counsel: (1) "declined to adopt and argue [the] motion that was prepared by [Petitioner] which was correct"; (2) "failed to locate and call significant witnesses" including CVS employee who drove Rafat to Petitioner; (3) failed to advise Petitioner of potential defenses; (4) failed to adequately investigate the matter; (5) "fail[ed] to counsel [Petitioner] to accept [the] plea resulting in [a] shorter sentence"; and (6) failed to file sufficient pre-trial motions. (Pet. at ECF pp. 20-21.)[16]

Construing Petitioner's pro se submissions liberally, the allegations of ineffective assistance of counsel were raised in state court in Petitioner's first 440.10 motion. (See First 440.10 Mot. at ECF pp. 98-105.) The Supreme Court of Suffolk County rejected Petitioner's ineffective assistance of counsel claims on the merits, stating that he "ha[d] failed to show that he was denied meaningful representation." (Order Denying First 440.10 Mot. at ECF pp. 93-94.) Accordingly, as the state court rejected these claims on the merits, the Court will apply AEDPA deference and reach the merits of each of these claims.

1. The Legal Standard

---

[16] Petitioner adds that the alleged ineffective assistance of counsel also violated his Fourteenth Amendment due process rights, as the Court finds no merit to any of his ineffective assistance claims, the Court rejects his due process claim. (Pet. at ECF pp. 20-21.)

To prevail on a claim of ineffective assistance of counsel, petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies in his counsel's performance were prejudicial to his defense." Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 690, 691-92, 104 S. Ct. 2052, 2065, 2066-67, 80 L. Ed. 2d 674 (1984)). In evaluating whether an attorney's representation fell "below an objective standard of reasonableness," a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2064-65. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. 466 U.S. at 691, 104 S. Ct. at 2066.

The second prong of the Strickland test requires that any deficiencies in counsel's performance be prejudicial to the defense. See Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. While a finding of prejudice is not dependent upon a showing "that counsel's deficient conduct more likely than not altered the outcome in the case," the petitioner nevertheless must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94, 104 S. Ct. 2068. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

### 2. Failed to Adopt Motion

Petitioner first argues that he received ineffective assistance of counsel when his attorney failed to adopt a motion he filed pro se prior to trial. (Pet. at ECF p. 20.) Respondent opposes this argument, stating that:

> "[i]n his pro se motion, [P]etitioner requested the trial court grant the following relief: (1) dismissal of the Indictment based on lack of sufficient evidence; (2) dismissal of the Indictment because the charging instrument did not include any facts to show how [P]etitioner committed Robbery in the First Degree; (3) suppression of any identification of [P]etitioner made by any witness to the crime; (4) suppression of all statements by [P]etitioner to law enforcement; (5) prohibiting the District Attorney from using any and all information that arose from the Grand Jury proceedings; and (6) directing the prosecution to provide Brady and Rosario materials. With the exception of two and five, all other requests were made by trial counsel . . . [a]s to [P]etitioner's remaining two pro se claims, trial counsel cannot be deemed ineffective for not adopting frivolous arguments."

(Resp't's Mem. of Law at 21.)  The Court agrees.

It is well established that counsel need not raise every non-frivolous issue simply because a client suggests it "if counsel, as matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312, 77 L. Ed. 2d 987 (1983); see also Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).  In addition, there is

a strong presumption that counsel used "'reasonable professional assistance'" and conducted himself accordingly. See Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). "A petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

As addressed above, the constitutional requirements of a sufficient indictment were met--the indictment set out the date and county of the crime, the victim's identity, and the elements of a robbery in the first degree, including the forcible removal of property and the use of a dangerous instrument in the flight therefrom. Accordingly, Petitioner's suggested bases to dismiss the indictment would not have succeeded and "counsel could not therefore have been ineffective for failing to make a motion that would have been futile." United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008). In addition, the court addressed the alleged errors during the grand jury proceeding above, and as none provide a basis for relief, counsel failing to make a motion containing the same arguments would have failed. In sum, counsel failing to adopt Petitioner's frivolous motion does not constitute an error of constitutional magnitude.

3. Failed to Locate Witness

Petitioner claims that he received ineffective assistance of counsel when his trial counsel failed to locate and call witnesses, in particular failing to call the eyewitness who drove Rafat to Petitioner. (See Pet. at ECF p. 21.)

It is established that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690, 104 S. Ct. at 2066). "In assessing performance, [a court] must apply a 'heavy measure of deference to counsel's judgments.'" Id. (quoting Strickland, 466 U.S. at 691, 104 S. Ct. at 2066). In addition, "'strategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings." Bonneau v. Scully, Nos. 86-CV-0270, 86-CV-3901, 1991 WL 90739, at *1 (S.D.N.Y. May 23, 1991) aff'd, 956 F.2d 1160 (2d Cir. 1992) (internal quotation marks and citations omitted).

"Courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury. 'The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.'" Greiner, 417 F.3d at 323 (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir.

1998)) (alteration in original); see also United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." (internal quotation marks and citations omitted)).

First, Petitioner's assertion that trial counsel failed to locate witnesses is conclusory as Petitioner fails to articulate what other witnesses would have assisted with his defense. Second, regarding Petitioner's argument that the CVS employee who drove Rafat to the scene should have testified at trial does not establish a constitutional error under Strickland. Petitioner does not claim that this witness would have provided exculpatory evidence to the trial court or that he was a favorable witness for Petitioner. Accordingly, Petitioner has not shown that counsel was objectively unreasonable by not presenting this witness' testimony during the bench trial. Therefore, he has not shown any probability that the result of the proceeding would have been altered with this testimony, and as such, the Court rejects this claim.

4. Failed to Advise Regarding Potential Defenses

Petitioner also argues that he received ineffective assistance of counsel when his attorney failed to advise him regarding potential defenses. (Pet. at ECF p. 21.)

Generally, "[a] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has reasonable justification for the decision" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." DeLuca v. Lord, 77 F.3d 578, 588, 588 n.3 (2d Cir. 1996). Further, "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Best, 219 F.3d at 201 (internal quotation marks and citations omitted). Further, the Court notes that "[s]elf-serving conclusory allegations" will not "establish ineffective assistance of counsel." Sturdivant v. Barkley, No. 04-CV-5659, 2007 WL 2126093, at *7 (E.D.N.Y. July 24, 2007).

Petitioner fails to articulate any potential defense that defense counsel failed to pursue or any investigatory steps that counsel failed to take. Further, Petitioner does not establish that had counsel not erred, the result of the proceeding would have been different. Rather, Petitioner chose to testify on his own behalf at trial and insisted that he did not use a dangerous instrument during the incident, denying one of the essential elements of a Robbery in the First Degree. At the end of trial,

the court rejected Petitioner's defense. Ultimately, the Court finds that Petitioner has failed to establish that counsel committed an error or that he was prejudiced by counsel's performance, thus he has not established ineffective assistance of counsel.

### 5. Failed to Adequately Investigate

Petitioner also claims that he is entitled to habeas relief because his trial counsel failed to adequately investigate his case. (Pet. at ECF p. 21.)

Generally, "[d]efense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Rosario v. Ercole, 601 F.3d 118, 130 (2d Cir. 2010) (quoting Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003)). However, the Court notes that it "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "Post-hoc complaints about the strategy or tactics employed by trial counsel, or complaints that trial counsel did not conduct a sufficiently vigorous pre[-]trial investigation, are typically found to be insufficient to satisfy Strickland." Agyekum v. United States, No. 01-CV-5808, 2002 WL 1000950, at *5 (S.D.N.Y. May 16, 2002).

Considering the totality of defense counsel's representation, Petitioner has failed to demonstrate that any errors amounted to ineffective assistance of counsel or what investigatory errors were made during his representation. Rather, defense counsel: filed pre-trial motions, including an initial successful motion to dismiss the indictment based on Criminal Procedure Law § 190.50; participated actively at the suppression hearing; cross-examined the witnesses presented by the prosecution at trial; and called witnesses on Petitioner's behalf. Thus, as Petitioner has failed to demonstrate an error of constitutional magnitude, this claim fails.

### 6. Failed to Counsel to Accept Plea

Petitioner claims that he is entitled to relief as his "[t]rial layer was ineffective for failing to counsel [Petitioner] to accept [the] plea resulting in [a] shorter sentence." (Pet. at ECF p. 21.) The Court has considered this claim and finds that it does not establish either Strickland's performance prong or the prejudice prong.

A review of the underlying record shows that Petitioner was aware of the parameters of the pre-trial offer but refused to accept it. (See Hr'g. Tr., 3:20-4:12.)

This Court does not find credible Petitioner's claim that counsel failed to advise him to take the guilty plea or that if counsel had provided such advice that the results of the proceeding

would have been different.  This Court must be deferential to counsel's performance, as "'it is all too tempting for a [petitioner] to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). Accordingly, the Court rejects this claim.

### 7. Failed to File Sufficient Pre-trial Motions

Finally, Petitioner asserts that he received ineffective assistance of counsel "because before pre-trial hearings he submitted one motion and that was only a letter of intent to the court which didn't state [any] facts or [cite] any case law or statutes." (Pet. at ECF p. 21.)

This argument fails because Petitioner is unable to establish Strickland's first prong, as he has not demonstrated his counsel committed an error.  The Court notes that though a petitioner "may not be pleased with the strategy employed by his trial attorney, that alone is insufficient to establish his attorney's ineffectiveness." United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991).

In the instant matter, Petitioner's argument that counsel failed to file sufficient pre-trial motions is not

supported by the record. Rather, Petitioner's counsel filed a successful motion pursuant to Criminal Procedure Law § 190.50, allowing for the case to be represented to the Grand Jury, and he filed a request for pre-trial suppression hearings which was granted. In sum, as Petitioner has not demonstrated an error by counsel under this ground, Petitioner has not shown he is entitled to relief.

CONCLUSION

Petitioner's writ of habeas corpus (D.E. 1) is DENIED and his letter motion to amend (D.E. 7) is DENIED. The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court also certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). The Clerk of the Court is respectfully directed to CLOSE this case and mail a copy of this Order to Petitioner.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September 30, 2019
         Central Islip, New York